## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRANCE TYSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :  Case No. 3:20-cv-296 (SRU) |
| | : |
| NURSE JULIET,<br>    Defendant. | :<br>: |

### INITIAL REVIEW ORDER

Terrance Tyson ("Tyson") was confined at the Osborn Correctional Institution ("Osborn") when he initiated this action. He has recently informed the Court that he now resides in Waterbury, Connecticut. *See* Notice, Doc. No. 8. He has filed a complaint under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 claiming that Nurse Juliet was deliberately indifferent to his medical needs in July 2019. For the reasons set forth below, I dismiss the complaint in part.

**I.    Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. The standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.     Facts**

As of July 2019, Tyson had been diagnosed as a diabetic.  *See* Compl., Doc. No. 1, at 2 ¶ 9; at 3 ¶ 16.  On or about July 17, 2019, Tyson visited the medical department to receive his shot of insulin.  *Id.* at 2 ¶ 9.  During the visit, Tyson informed Nurse Juliet that a painful abscess had developed on his back.  *Id.*  Nurse Juliet referred Tyson to be seen by Advanced Practice Registered Nurse ("APRN") Scott for evaluation of the abscess.  *Id.* ¶ 10.  APRN Scott examined the abscess, prescribed an antibiotic for infection and Motrin to alleviate pain and instructed Tyson to ask to be seen in the medical department if "he had any further complications."  *Id.* ¶¶ 10–11.

At approximately 12:00 a.m. on July 21, 2019, the abscess on Tyson's back began to rupture.  *Id.* ¶ 12.  A unit manager contacted the medical department on behalf of Tyson.  *Id.*  After speaking with Nurse Juliet, the unit manager informed Tyson that he must agree to pay the $3.00 medical department visit fee in order to be seen.  *Id.*  Tyson did not think he should have to pay the $3.00 fee because his need for an evaluation constituted follow-up treatment.  *Id.*  Nurse Juliet insisted that Tyson agree to pay the fee.  *Id.*  After Tyson agreed to pay the $3.00 fee, a prison official escorted Tyson to the medical department.  *Id.* at 3 ¶ 14.

When he arrived, Nurse Juliet looked at the abscess and wiped it with a piece of gauze. *Id.* Nurse Juliet then asked Tyson to sign the form indicating that he had agreed to pay the $3.00 visit fee. *Id.* Tyson refused to sign the form and reasserted his argument that a fee should not be required for a follow-up visit. *Id.* ¶ 15. Tyson also voiced his concern that Nurse Juliet had neglected to take his vital signs and informed Nurse Juliet that he felt feverish, nauseated and was experiencing chills. *Id.* Nurse Juliet turned her back to Tyson, commented that nothing was wrong with him, informed Tyson and that he did not need to sign the form indicating that he had agreed to pay the visit fee and directed him to return to his cell. *Id.* An officer escorted Tyson back to his cell. *Id.*

Later that day, at approximately 3:30 p.m., Tyson visited the medical department to receive his shot of insulin. *Id.* ¶ 16. He explained to a nurse that he continued to experience pain from the abscess and that the prescription for Motrin had not alleviated his symptoms. *Id.* A medical staff member took his temperature and examined him. *Id.* ¶ 17. Tyson's temperature was 102 degrees. *Id.* A medical provider determined that Tyson's condition required his transfer to the University of Connecticut Health Center ("UCONN"). *Id.* During Tyson's stay at UCONN from July 21, 2019 to July 23, 2019, he experienced "acute symptoms and pain" and underwent a surgical procedure on his back. *Id.*

After returning to Osborn, Tyson experienced neuropathy in the area of his back where the abscess had been. *Id.* at 4 ¶ 21. Tyson describes the neuropathy as "pins and needles, firey, icy burning sensations" that migrated from his back to his upper and lower extremities. *Id.* Tyson still experiences throbbing pain "with every heartbeat" in the area where the abscess had been. *Id.*

3

**III.     Discussion**

Tyson contends that Nurse Juliet was deliberately indifferent to his need for treatment of the abscess on his back. He sues Nurse Juliet in her individual capacity for compensatory and punitive damages.

As a preliminary matter, I note that Tyson did not sign the complaint. *See* Doc. No. 1. Rule 11(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented." Furthermore, Local Rule 10 requires that a complaint and all other pleadings be signed by the person or attorney who prepared the complaint or other pleading and include the date the document was prepared. *See* D. Conn. L. Civ. R. 10. Thus, the complaint does not comply with Rule 11(a), Fed. R. Civ. P. or Rule 10, D. Conn. L. Civ. R.

        **A.     Section 1983 Claims**

The Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs." *Estelle v Gamble*, 429 U.S. 97, 104 (1976). An inmate must meet two elements to state a claim that a prison official or medical provider was deliberately indifferent to his medical needs. The objective element requires the inmate to assert facts to demonstrate that his medical need or condition is serious. *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted). In determining whether a condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an

4

individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second element is subjective. To meet that element, the inmate must allege that the prison official or medical provider was actually aware that his actions or inactions would cause a substantial risk of serious harm. *See Hill*, 657 F.3d at 122 (citation omitted). Mere negligent conduct, however, does not constitute deliberate indifference. *See id.* at 123 ("'[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106). Nor does a difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment. *Chance*, 143 F.3d at 703.

Tyson has alleged that on July 17, 2019, he suffered from a painful abscess that may have been infected. In the early morning hours of July 21, 2019, as the abscess began to rupture, Tyson experienced symptoms that suggested that the abscess was infected and had not responded to the antibiotic. I conclude that Tyson has plausibly alleged that in the early morning hours of July 21, 2019, when Nurse Juliet examined him, he suffered from a medical condition that was serious or suffered from a condition that could degenerate into a serious medical need. *See, e.g., Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (internal quotations omitted)); *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (noting that "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment.")

(citing *Chance*, 143 F.3d at 702); *Case v. Anderson*, 2017 WL 3701863, at *8 (S.D.N.Y. Aug. 25, 2017) ("A claim of an unconstitutional delay or interruption in treatment is only cognizable if it reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition[,] or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.") (internal quotation marks and citations omitted); *Odom v. Kerns*, 2008 WL 2463890, at *7 (S.D.N.Y. June 18, 2008) (cuts and open wounds that eventually became infected could be serious medical needs, even absent allegations that plaintiff had chronic pain or inhibition of daily activities). Accordingly, I address whether Tyson has asserted facts to meet the subjective prong of the Eighth Amendment standard.

Tyson alleges that Nurse Juliet initially declined to examine him unless he agreed to pay the $3.00 co-pay. When he consented to paying the co-pay, Nurse Juliet examined his back and wiped the abscess with gauze but ignored his complaints of nausea, fever and chills, failed to take his vital signs and directed him to return to his cell. Tyson does not allege that he made any other complaints about his health either to a unit officer or manager or the medical department until he was called to the medical department approximately fifteen hours later to receive his shot of insulin. At that time, he complained about symptoms associated with the abscess and that the medication that had been prescribed by APRN Scott to relieve the pain caused by the abscess was no longer effective. A nurse evaluated Tyson and took his temperature. A decision was then made by a medical provider that Tyson required further treatment at a hospital. Tyson underwent a surgical procedure on his back during the three-day period he remained at UCONN. Tyson still experiences pain at the site of the abscess.

Nurse Juliet presumably had access to Tyson's medical records when she examined him and was aware that he was prescribed medication to treat an infection and was instructed to return to the medical department if he experienced further complications. I cannot discern whether Nurse Juliet's decision not to further evaluate Tyson based on the symptoms that he related to her constitutes a conscious disregard to a serious risk of harm to his health given that within approximately fifteen hours another nurse examined him and a medical provider ensured that Tyson received necessary treatment for the abscess and any related symptoms by transferring him to a hospital. *See, e.g., Sims v. City of New York*, 788 F. App'x 62, 64 (2d Cir. 2019) ("Although a delay in providing necessary medical care may in some cases constitute unconstitutional deliberate indifference, such a classification is reserved for when "officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years.") (internal quotation marks and citations omitted); *Thomas v. Tisch*, 2009 WL 701009, at *9 (E.D.N.Y. Mar. 11, 2009) ("[P]laintiff has alleged that Yaphank officers deliberately deprived plaintiff of his medication, while aware of his condition as a diabetic and epileptic, and failed to forward his medical records and medication to Rikers Island such that he could be properly and promptly treated and, as a result, he suffered from pain for twenty hours. The Court finds these allegations of intentional delay on the part of defendants, coupled with plaintiff's alleged medical conditions and resulting injury, state a plausible claim of deliberate indifference under the Eighth Amendment that withstands a motion to dismiss."). I permit the deliberate indifference claim to proceed against Nurse Juliet in her individual capacity for further development of the record.

    **B.**    **Section 1985, 1986 and 1988 Claims**

In addition to invoking the Court's jurisdiction under 42 U.S.C. § 1983, Tyson attempts to invoke the Court's jurisdiction under 42 U.S.C. §§ 1985, 1986 and 1988. Compl. at 1 ¶ 4. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings. The first two subsections of 42 U.S.C. § 1985 clearly are not relevant to this action.

In order to state a claim under section 1985(3), a plaintiff must allege that: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) one or more of the defendants engaged in an overt act taken in furtherance of the conspiracy; and (4) as a result of the conspiracy he or she suffered a physical injury or an injury to his or her property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). A plaintiff must also allege that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.

Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and, mentioned in section 1985 of this title, are about to be committed and having power to prevent or aid in preventing the commission of same, neglects or refuses to do so. . . ." 42 U.S.C. § 1986.

Tyson has failed to allege that he is a member of a racial minority or that Nurse Juliet discriminated against him on that basis. *See Webster v. Fischer*, 694 F. Supp. 2d 163, 196 (N.D.N.Y. 2010) (dismissing § 1985(3) claim subject to dismissal when plaintiff fails to

8

establish membership in a protected class), *aff'd*, 398 F. App'x 683 (2d Cir. 2010). Furthermore, there are no facts to suggest that Nurse Juliet entered an agreement with any other individual to deny him medical treatment on July 21, 2019. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (Specifically, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] complaint containing only conclusory, vague, or general allegations of the conspiracy to deprive a person of constitutional rights cannot [even] withstand a motion to dismiss"). Given the absence of factual allegations in the complaint that Nurse Juliet conspired with another person to discriminate against him because of his race or on the basis of his membership in some other cognizable suspect class, Tyson has failed to state a plausible claim under section 1985 and that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

A section 1986 claim "must be predicted on a valid" section 1985 claim. *Thomas v. Roach*, 165 F. 3d 137, 147 (2d Cir. 1999). Because I have concluded that Tyson has failed to state a plausible section 1985 claim, the section 1986 claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law or, "where federal law is unsuited or insufficient 'to furnish suitable remedies,'" in accordance with "principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States." *Moor v. Alameda Cnty.*, 411 U.S. 693, 702–03 (1973) (quoting 42 U.S.C. § 1988). Section 1988(a) does not provide an independent cause of action. *See id.* at 702–

9

06. Section 1988(b) provides for an award of attorneys' fees. As a *pro se* litigant, Tyson is not entitled to attorneys' fees under section 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991). The section 1988 claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**It is hereby ordered that:**

**(1)** The claims asserted under 42 U.S.C. §§ 1985, 1986 and 1988 are **DISMISSED**. *See* 28 U.S.C. § 1915A(b)(1). I permit the Eighth Amendment deliberate indifference to medical needs claim asserted under 42 U.S.C. § 1983 to proceed against Nurse Juliet in her individual capacity for further development of the record. **The Clerk is directed to mail via U.S. Mail a copy of this Order and a copy of the Complaint, [Doc. No. 1], to Tyson at his current address on file with the Court.**

**(2)** As indicated above, Tyson neglected to sign and date the Complaint as required by Fed. R. Civ. P. 11(a) and D. Conn. L. Civ. R. 10. Within twenty (20) days of the date of his order, Tyson shall file a copy of the Complaint that includes his signature and the date on which he signed the Complaint. If Tyson either fails to file a notice of his current mailing address or fails to file a copy of the Complaint with his signature and the date on which he signed it within the time specified, the Court will dismiss the case,

**(3)** If Tyson files a signed and dated copy of the Complaint within the time specified, the Court will enter an order directing the Clerk to effect service of the Complaint on Nurse Juliet in her individual capacity and set deadlines for filing a response to the Complaint, completing discovery and filing summary judgment motions.

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of June 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge