UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRANCE TYSON,<br>    *Plaintiff*, | )   3:20-CV-296 (SVN)<br>)<br>) |
| v. | )<br>) |
| JULIET SESAY,[1]<br>    *Defendant*. | )<br>)   September 26, 2022 |

**RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

This civil rights action concerns the adequacy of medical treatment received by Plaintiff Terrance Tyson while he was incarcerated at Osborn Correctional Institution ("Osborn"). Specifically, Plaintiff alleges that Defendant, Juliet Sesay, a nurse employed at Osborn, was deliberately indifferent to his medical needs in violation of the Eighth Amendment when she inadequately treated an abscess on his back. Plaintiff further alleges that, due to her indifference, he was later hospitalized and had to undergo surgery to treat the abscess and resulting infection.

Pending before the Court is Defendant's motion for summary judgment, in which she contends that she did not violate the Eighth Amendment and, alternatively, that she is entitled to qualified immunity because her actions were objectively reasonable. Though Plaintiff initiated this action *pro se*, the Court appointed *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1) and Local Rule 83.10 to assist Plaintiff in responding to the motion. ECF Nos. 35, 49. The Court now concludes that there are genuine issues of material fact that render summary judgment inappropriate. For the reasons described below, Defendant's motion is denied.

---

[1] Plaintiff initially filed this action against "Nurse Juliet," who has been identified as Juliet Sesay. The Clerk is directed to edit the case caption to replace "Nurse Juliet" with "Juliet Sesay."

I.      FACTUAL BACKGROUND

The parties agree on the following basic facts. During the relevant timeframe, Plaintiff was incarcerated at Osborn, where Defendant was employed as a nurse. Pl.'s Local Rule ("LR") 56(a)2 Statement ("St."), ECF No. 59, ¶¶ 7–8. Defendant has been licensed as a nurse in Connecticut, and employed at Osborn, for twenty years. *Id.* ¶¶ 8–9. The relevant events occurred in July of 2019.

The remainder of the facts are disputed. Plaintiff characterizes the events as follows. He has type 2 diabetes and received daily insulin injections at Osborn's medical office. Tyson Aff., ECF No. 58-1, ¶ 7. On July 17, 2019, when he arrived at the medical center for his daily injection, he "advised the staff that [he] had an abscess developing on [his] back that was quite painful." *Id.* ¶¶ 6, 8. He was immediately evaluated by an advanced practice registered nurse, who prescribed antibiotics for the infection and Motrin to treat Plaintiff's pain. *Id.* ¶¶ 9–10. This nurse told Plaintiff to return to the medical office if he had "any further complications[.]" *Id.* ¶ 11.

According to Plaintiff, on July 21, 2019, around midnight, "the abscess began to rupture." *Id.* ¶ 12. *See also* ECF No. 17 at 4 (noting that the medical record was signed by Defendant on July 21, 2019, at 1:27:17 a.m.). The unit officer contacted the medical office, and Defendant reported to the officer that she would not see Plaintiff unless he paid the $3.00 sick call fee. Tyson Aff. ¶ 14. Although Plaintiff believed that he was not required to pay the fee because this was a follow-up appointment, he agreed to pay the fee and was taken to see Defendant. *Id.* ¶¶ 17–18. Plaintiff attests that Defendant was "very dismissive" of his complaints. *Id.* ¶ 19. She "simply lifted [his] shirt, looked at [his] back very quickly, wiped [his] back with a piece of gauze," and directed him to sign the form authorizing payment of the sick call fee. *Id.* Plaintiff did not sign the form, but, rather, told Defendant that he "felt feverish, chills, and nauseated" and expressed

concern that she had not taken his vitals. *Id.* ¶ 21. Plaintiff attests that Defendant did not address those symptoms and instead said "there was nothing wrong" with him. *Id.* ¶ 22. Defendant then returned to the issue of the $3.00 payment, but this time told Plaintiff that he did not need to sign the form to authorize the payment. *Id.* ¶ 23. The $3.00 payment was taken from his inmate account anyway. *Id.*

Around 8:30 a.m. the following morning, Plaintiff returned to the medical office for his daily insulin injection. *Id.* ¶ 26. At that time, he informed another nurse about his symptoms, indicating that they had worsened overnight. *Id.* He represents that he "felt in dire need of medical attention" because the Motrin did not alleviate his pain. *Id.* ¶ 27. After this nurse discovered that he had a fever of 102 degrees, Plaintiff was transported to an outside hospital, where he remained "for approximately one week, with acute symptoms of infection" resulting from the abscess. *Id.* ¶¶ 28–29. Plaintiff eventually underwent surgery on his back related to the abscess, and he attests that all this treatment was "extremely painful and debilitating." *Id.* ¶¶ 30–31. His symptoms included "throbbing pain," neuropathy in the afflicted area, which subsequently spread, "pins and needles" in the afflicted area, and "fiery, icy burning sensations that continue to this present day." *Id.* ¶ 35.

Defendant, on the other hand, characterizes the relevant events as follows. On July 21, 2019, Plaintiff complained to the medical unit that "he had a pimple on his back that had burst and needed medical attention." Sesay Aff., ECF No. 26-4, ¶ 10. Defendant attests that, when she treats an inmate, she generally addresses "all of the concerns that the inmate raises" and reviews their medical chart. *Id.* ¶¶ 11–12. Defendant further attests that she took Plaintiff's vitals, although the only vitals listed in the medical report from the incident were dated from a few days before, and the medical record does not indicate Plaintiff's temperature or blood pressure from the visit on

3

July 21.  ECF No. 27 at 2.  Defendant attests that Plaintiff reported an abscess on his back, but she "conducted a visual assessment of his back" and found that he "did not have an abscess on his back" at that time.  Sesay Aff. ¶¶ 13–15.  Rather, Defendant observed only "irritation in his skin folds on the right, lower side of his back."  *Id.* ¶ 14.  Defendant attests that she "cleaned the affected area" with saline, "noted that there was no blood draining from the area," and "applied an antibiotic ointment to the area[.]"  *Id.* ¶¶ 16–17.  Defendant advised Plaintiff to "leave the area open to the air," but he "became upset" and wanted her to cover the area with gauze and tape.  *Id.* ¶ 18.  Defendant states that Plaintiff refused to sign the form authorizing the sick call fee.  *Id.*

Plaintiff initially filed his complaint in March of 2020, and amended his complaint at the direction of the Court (Underhill, C.J.) in July of 2020.  ECF Nos. 1, 9, 10.  The Court's Initial Review Order pursuant to 28 U.S.C. § 1915A dismissed certain claims, but permitted Plaintiff's Eighth Amendment claim of deliberate indifference to proceed.  ECF No. 9 at 10.  Specifically, the Court reasoned that further development of the factual record was warranted regarding Defendant's "decision not to further evaluate [Plaintiff] based on the symptoms that he related to her[.]"  *Id.* at 7.

At the conclusion of discovery, Defendant filed a motion for summary judgment, ECF No. 26.  The Court exercised its discretion to appoint *pro bono* counsel for Plaintiff for the limited purpose of assisting him in a settlement conference with Defendant, which did not result in a settlement.  Thereafter, the Court appointed new *pro bono* counsel for Plaintiff for all purposes, including helping him draft an opposition brief to Defendant's motion for summary judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." With respect to materiality, a fact is "material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, "[a] genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor. . . . Thus, summary judgment dismissing a claim is inappropriate when the admissible materials in the record make it arguable that the claim has merit." *Kee v. New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citations and internal quotation marks omitted).

The movant bears the burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee*, 12 F.4th at 158 (citation and internal quotation marks omitted).

5

**III.     DISCUSSION**

　　A.  Eighth Amendment

*1. Legal Standard*

Plaintiff's claim arises under 42 U.S.C. § 1983, which "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  Relevant here, the Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, including punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The standard of "deliberate indifference to a prisoner's serious medical need" includes both subjective and objective components.  *Id.*  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702, and *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).  "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* at 184.

The objective component requires the plaintiff to demonstrate that he had a sufficiently serious "medical need," in other words, a "serious illness or injury resulting in the infliction of

6

unnecessary pain and suffering." *Id.* at 183–84 (citing *Estelle*, 429 U.S. at 105).  In addition, the subjective component requires the plaintiff to demonstrate that the prison official's actions were more than "an inadvertent failure to provide adequate medical care[.]" *Id.* (citing *Estelle*, 419 U.S. at 105–06).  *See also Chance*, 143 F.3d at 703 (explaining that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim").  Rather, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety," which is "a state of mind equivalent to the familiar standard of recklessness as used in criminal law."  *Smith*, 316 F.3d at 184 (internal quotation marks omitted) (quoting *Chance*, 143 F.3d at 702, and *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (per curiam)).  Although "'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

*2. Discussion*

Defendant has conceded, for the purpose of the present motion for summary judgment, that the record raises a genuine issue as to whether Plaintiff's medical need was sufficiently serious as

to satisfy the objective component of the standard.[2]  ECF No. 26-1 at 4.  Accordingly, Defendant's motion focuses on the subjective component of Plaintiff's Eighth Amendment claim, arguing that she is entitled to summary judgment because no reasonable jury could find that she acted with the requisite state of mind.  With respect to the subjective component, the Court finds genuine issues of material fact that preclude judgment as a matter of law.

Importantly, the crucial facts that would dictate the outcome of this case are in dispute, and the Court cannot make the credibility assessments necessary to resolve those disputed facts.  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Patterson v. Quiros*, No. 3:19CV147 (MPS), 2021 WL 681144, at *11 (D. Conn. Feb. 22, 2021) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017); *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 498 (1st Cir. 2011) ("The district court was too quick to decide that [the doctor's] version was credible and [the plaintiff's] not. This is precisely the sort of genuine and material dispute that ought to be resolved by a jury.").

For example, Defendant attests that she took Plaintiff's vital signs, including his temperature, and discovered nothing amiss.  However, Plaintiff attests that Defendant did not take his vital signs, which is consistent with the absence of any indication of his vitals dated July 21,

---

[2] In her reply brief, Defendant contends that, even if her assessment evinced conscious disregard for the substantial risk of serious harm to Plaintiff's health, his claim fails because the delay in treatment was very short, given that he was seen by another nurse merely eight hours later and immediately and adequately treated.  ECF No. 62 at 4. Defendant is correct that, when "the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original) (quoting *Chance*, 143 F.3d at 702).  In other words, a plaintiff suffers no objectively serious injury under the Eighth Amendment if he received adequate medical treatment after only minimal delay.  However, this informs only the objective component of the test for an Eighth Amendment claim arising out of inadequate medical care—and Defendant has conceded that component in its initial brief in support of summary judgment. ECF No. 26-1 at 4.  Accordingly, the Court need not consider whether Plaintiff raises sufficient facts that he suffered from a serious medical need arising from the delay in his treatment.

2019, in his medical record. A reasonable jury considering this record could draw the reasonable inference that, because Plaintiff had a 102-degree fever at 8:30 a.m. on July 22, he likely had a notably raised temperature merely eight hours prior when Defendant examined him. Relatedly, Plaintiff attests that he told Defendant he "felt feverish, chills, and nauseated," when she examined him around midnight. Tyson Aff. ¶ 21.

Viewing these disputed facts in the light most favorable to Plaintiff, as the Court must on summary judgment, a jury could reasonably find that Defendant failed to take Plaintiff's temperature despite his complaints of fever, which could permit a finding of deliberate indifference arising from Defendant's cursory or apathetic treatment. *See Bardo v. Wright*, No. 3:17-CV-1430 (JBA), 2019 WL 5864820, at *6–7 (D. Conn. Nov. 8, 2019) (denying a doctor's motion for summary judgment because a jury could find that the doctor's "treatment of [the plaintiff] was 'cursory,' and thus infer that [the doctor] acted with deliberate indifference toward the patient's condition"); *Faraday v. Lantz*, No. 3:03CV1520 (SRU), 2005 WL 3465846, at *6 (D. Conn. Dec. 12, 2005) (denying a doctor's motion for summary judgment because a jury could find that, "without trying to determine the source or cause of [the plaintiff's] complaints of severe pain, [the doctor] simply dismissed his complaints"). Alternatively, these facts would allow a jury to reasonably find that Defendant noticed his elevated temperature but inexplicably failed to pursue any further treatment. *See Braham v. Perelmuter*, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *17 (D. Conn. July 28, 2017) (denying a dentist's motion for summary judgment where ambiguous evidence in the record raised "genuine issues of material fact in dispute as to whether the course of treatment prescribed by [the dentist] . . . derived from sound medical judgment"); *Patterson*, 2021 WL 681144, at *11 (denying summary judgment where the plaintiff's "version of the facts" raised a question of fact about whether the defendant's decision not to provide him with

9

an x-ray or assistive equipment "was based on his sound medical judgment or other considerations"). Such findings could evince Defendant's "conscious disregard of a substantial risk of serious harm," and therefore could support a conclusion that she was deliberately indifferent in violation of the Eighth Amendment. *See Hathaway*, 99 F.3d at 553.

In addition, Defendant attests that she generally reviews an inmate's medical chart when administering treatment, suggesting that she reviewed Plaintiff's chart during the July 21 visit. Sesay Aff. ¶ 12. Thus, Defendant presumably knew that, only four days previously, another nurse had found an abscess on Plaintiff's back and prescribed antibiotics and pain medication. Defendant attests that she saw no abscess, and instead saw only irritated skin in the folds of Plaintiff's skin on his back, which she treated by wiping the affected area with saline. *Id.* ¶¶ 14–15. Plaintiff represents, however, that a mere eight hours later when another nurse examined him and took his temperature, he was hospitalized for an infection resulting from the abscess on his back. Tyson Aff. ¶ 29.

Viewing these disputed facts in the light most favorable to Plaintiff, a jury could reasonably infer that the abscess and associated risk of infection were "sufficiently obvious that [Defendant] must have had actual awareness of it." *Bardo*, 2019 WL 5864820, at *7. *See also Leavitt*, 645 F.3d at 498 (reversing district court's grant of summary judgment because, in light of the accumulated facts the defendant knew, a jury could "reasonably infer that [the defendant] was aware that [the plaintiff's] health was at risk"); *Hudak v. Miller*, 28 F. Supp. 2d 827, 831 (S.D.N.Y. 1998) (Sotomayor, J.) ("[I]f the evidence shows that the risk of serious medical problems was so obvious that a reasonable factfinder could infer actual knowledge of them on [defendant's] part, this Court must deny summary judgment."). Specifically, sufficient evidence in the record— Defendant's representation that she would have reviewed Plaintiff's medical records during her

visit; Plaintiff's representation that he had been treated for the abscess by the medical office four days earlier; and his representation that the abscess and resultant infection were so serious that he was hospitalized merely eight hours after Defendant's evaluation—permit a reasonable jury to find that Defendant had actual knowledge of the abscess and resulting risk of infection. *Hudak*, 28 F. Supp. 2d at 831 (explaining that, "although [the plaintiff] must prove that [the defendant] actually knew of the risk . . . evidence that the risk was obvious may suffice to allow a factfinder to infer actual knowledge from that obviousness"); *Hart v. Blanchette*, 149 F. App'x 45, 47 (2d Cir. 2005) (concluding that a doctor knew information regarding the plaintiff's medical history because it was in his medical chart and the doctor conceded that he read the plaintiff's medical chart). Accordingly, a jury could reasonably "find that [Defendant] intentionally disregarded certain of [Plaintiff's] medical records and his complaints of the severity of his condition and, thus, acted with deliberate indifference" by failing to administer proper treatment. *Faraday*, 2005 WL 3465846, at *6.

Regarding the treatment Defendant provided, she attests that she cleaned the affected area with saline and applied antibiotic ointment, Sesay Aff. ¶¶ 16–17, whereas Plaintiff attests that Defendant simply wiped the area with gauze, Tyson Aff. ¶ 19. In light of the disputed facts regarding his condition, his symptoms, and Defendant's evaluation, there is a genuine dispute as to whether Defendant "consciously [chose] an easier and less efficacious treatment plan," exhibiting deliberate indifference to Plaintiff's medical needs. *Chance*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974), for the proposition that the "choice of an easier but less efficacious course of treatment can constitute deliberate indifference"). *See also Bardo*, 2019 WL 5864820, at *7 (reasoning that a jury could find the doctor "consciously cho[se] an easier and less efficacious treatment plan" for the plaintiff's cancerous lesion). Indeed, a

reasonable jury could infer that Defendant may have chosen the easier, but less efficacious course of treatment because of her frustration that Plaintiff refused to pay the $3.00 sick call fee. *See Davis v. Furey*, No. 3:19-CV-1867 (JCH), 2021 WL 2827366, at *4 (D. Conn. July 6, 2021) (explaining that "a medical provider may act with deliberate indifference by consciously providing an inmate with an easier and less efficacious treatment plan, particularly if the provider does so because of ulterior motives," which can include improper monetary incentives (citations and internal quotation marks omitted)).

In sum, the question of whether Defendant consciously disregarded a substantial risk of serious harm to Plaintiff requires a factfinder to assess the parties' relative credibility and resolve certain key disputed facts. Such tasks are not properly performed by this Court at the summary judgment stage. Indeed, "[t]he state of the defendant's knowledge is normally a question of fact to be determined after trial." *Bardo*, 2019 WL 5864820, at *6 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)).

Defendant contends that Plaintiff raised insufficient evidence supporting his claim because he relies almost entirely on his affidavit. ECF No. 62 at 3. As an initial matter, the Court notes that Defendant likewise relies almost entirely on her affidavit, rendering the persuasiveness of the evidence presented effectively equal. The only further evidence presented by Defendant is the medical record of the July 21 visit, which, as noted above, supports certain arguments raised by both parties. Drawing all inferences in favor of Plaintiff as the non-movant, though, the Court must deny summary judgment. The Court acknowledges that the facts established at trial "may ultimately establish only negligence"; however, "the determination of the difference between negligence and deliberate indifference is . . . one for a trier of fact to make." *Hart*, 149 F. App'x

at 47 (reversing district court's grant of summary judgment); *accord Faraday*, 2005 WL 3465846, at *6.

### B. Qualified Immunity

#### *1. Legal Standard*

Defendant next contends that, even if she was deliberately indifferent to Plaintiff's medical needs, she is entitled to qualified immunity.[3] The doctrine of qualified immunity shields governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability while they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The United States Supreme Court has established a two-pronged test governing the qualified immunity defense. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id.* at 232. As explained above, there are genuine issues of material fact as to whether Defendant was deliberately indifferent to Plaintiff's medical needs, which satisfies the first prong of the test.

Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* This prong "turns on the objective legal reasonableness of the [defendant's] action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 244 (citations and internal quotation marks omitted). In other words, "even if the plaintiff's federal rights were clearly established at the time of the

---

[3] Given that the qualified immunity issue largely mirrors the merits of Defendant's alleged Eighth Amendment violation, the Court will address it despite Plaintiff's lack of briefing.

13

alleged violation, the defendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate those rights." *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995). However, a defendant's actions "are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420–21.

*2. Discussion*

Summary judgment is improper with respect to the objective legal reasonableness of Defendant's actions, for many of the same reasons that summary judgment is improper with respect to Defendant's conscious disregard of a substantial risk of serious harm to Plaintiff's health. *See Braham*, 2017 WL 3222532, at *18 (reasoning that the same "issues of fact" informing the question of whether the dentist was deliberately indifferent to the plaintiff's medical needs "preclude a finding that [the dentist] is entitled to qualified immunity"). In July of 2021, it was clearly established that actions such as those at issue here—a medical professional's allegedly cursory and apathetic evaluation of a patient, dismissive consideration of the patient's self-reported pain, disregard of the patient's medical history as explained by his chart, and choice of a less effective treatment possibly based on considerations other than sound medical judgment—could constitute deliberate indifference to a serious medical condition in violation of the Eighth Amendment. *See Chance*, 143 F.3d at 703–04; *Faraday*, 2005 WL 3465846, at *6; *Hart*, 149 F. App'x at 47.

"Although qualified immunity is a question of law, because [the] issue of reasonableness depends on the facts of the situation, if there is a dispute as to the facts, that must be resolved by the factfinder before qualified immunity can be granted." *Maye v. Vargas*, 638 F. Supp. 2d 256, 262 (D. Conn. 2009). Here, the Court cannot measure the reasonableness of Defendant's actions

14

because "there are facts in dispute that are material to a determination of reasonableness," rendering summary judgment inappropriate. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see also id.* ("In measuring 'reasonableness,' we consider the facts and circumstances of each particular case").

## IV.     CONCLUSION

For the reasons described herein, Defendant's Motion for Summary Judgment, ECF No. 26, is DENIED.  The Court will schedule a status conference to discuss a schedule for pretrial submissions and trial.

**SO ORDERED** at Hartford, Connecticut, this 26th day of September, 2022.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE